**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LANDAIRSEA SYSTEMS, INC.** | |
| Plaintiff, | |
| | Case No.: _____ |
| **v.** | |
| **SYNCHRONIZE INCOME DEVELOPMENT, LLC, EVENTFALCON LIMITED, BRANDON BELL, an individual, JOHN STANLEY, an individual, and VANGUARD DEALER SERVICES, LLC,** | **JURY DEMANDED** |
| Defendants. | |

## COMPLAINT

For its Complaint against Defendants, Synchronize Income Development, LLC ("Synchronize"), EventFalcon Limited ("EventFalcon"), Brandon Bell ("Bell"), and John Stanley ("Stanley"), Vanguard Dealer Services, LLC. ("Vanguard"), Plaintiff LandAirSea Systems, Inc. ("LAS") states as follows:

### PARTIES

1.      Plaintiff LAS is an Illinois corporation with its principal place of business at 2040 Dillard Court, Woodstock, Illinois 60098.

2.      Defendant Synchronize is an Illinois limited liability company with its principal place of business at 220 East Illinois Street, Suite 701, Chicago, Illinois 60611.

3.      Defendant EventFalcon is a limited liability company registered in Ireland with an operational address at 1 Abbycourt, Kinsale, Cork, Ireland P17 F661.

4.      Defendant Vanguard is a New Jersey limited liability company with a principal place of business at 30 Two Bridges Road, Suite 240, Fairfield, New Jersey 07004.

5.     Defendant Bell is an individual domiciled in the State of Illinois and this District and is the Chief Executive Officer of Synchronize.

6.     Defendant Stanley is an individual and is a citizen of and domiciled in Ireland and is the Chief Executive Officer of EventFalcon.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Counts I-VI under 28 U.S.C. §§ 1331 and 1338(a) as these counts arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

8.     This Court has subject matter jurisdiction over Counts III, VI, IX, XII, XV, XVIII, XX, and XXIII-XXVI under 28 U.S.C. § 1332(a)(2) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of this State and citizens or subjects of another State or a foreign state.

9.     This Court has subject matter jurisdiction over Counts VII-XVIII under 28 U.S.C. §§ 1338(b) and 1367(a).

10.     This Court has subject matter jurisdiction over Counts XIX-XXVI under 28 U.S.C. § 1367(a).

11.     Defendant Synchronize is subject to personal jurisdiction in this Court as it is a corporation organized under the laws of the State of Illinois, has a principal place of business in this District, because it conducts business in this District and has committed at least some of the acts complained of herein within this District.

12.     Defendant Bell is subject to personal jurisdiction in this Court as he is an individual domiciled in Illinois and this District.

13.     Defendant EventFalcon is subject to personal jurisdiction in this Court under at least 735 ILCS 5/2-209(a)(1), (2), and (7) as the asserted causes of action arise from its transacting

business within Illinois, by committing one or more tortious acts in Illinois, and by making or performing of a contract or promise substantially connected with Illinois.

14.    Defendant Stanley is subject to personal jurisdiction in this Court under at least 735 ILCS 5/2-209(a)(1), (2), and (7) as the asserted causes of action arise from his transacting business within Illinois, by committing one or more tortious acts in Illinois, and by making or performing of a contract or promise substantially connected with Illinois.

15.    Defendant Vanguard is subject to personal jurisdiction in this Court under at least 735 ILCS 5/2-209(a)(1), (2), and (7) as the asserted causes of action arise from its transacting business within Illinois, by committing one or more tortious acts in Illinois, and by making or performing of a contract or promise substantially connected with Illinois.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) with respect to LAS's claims against Synchronize and Bell because they reside in this District and substantial part of the events or omissions giving rise to LAS's claims against them occurred in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(3) because they are subject to the Court's personal jurisdiction in this District.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) with respect to LAS's claims against EventFalcon and Stanley because a substantial part of the events or omissions giving rise to LAS's claims against them occurred in this District, and under 28 U.S.C. § 1391(b)(3) because they are subject to the Court's personal jurisdiction in this District.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) with respect to LAS's claims against Vanguard because a substantial part of the events or omissions giving rise to LAS's claims against it occurred in this District, and under 28 U.S.C. § 1391(b)(3) because they are subject to the Court's personal jurisdiction in this District.

## **BACKGROUND FACTS**

19. LAS sells global positioning (GPS) products and services under the SYNCHRONIZE® mark.

20. LAS is the owner of U.S. Trademark Registration No. 5,478,857 (the '857 Registration) (Exhibit A) for SYNCHRONIZE® for a GPS tracking device installed in vehicles and is used in business applications, in the nature of automotive dealerships, for fleet and inventory management as well as used by individual consumers for vehicle tracking purposes; Computer software system and mobile application used to track people and vehicles using GPS data from a real-time GPS tracking device; Global Positioning System (GPS). The Registration issued May 29, 2018, and is valid and subsisting.

21. LAS and Synchronize were parties to a Supplier and Exclusivity Agreement (Exhibit B) dated January 18, 2021.

22. Paragraph 1 of the Supplier and Exclusivity Agreement provides:

Supplier [LAS] agrees to sell and Customer agrees to buy, the following products (the "Goods") in accordance with the terms and conditions of this Agreement:

*Description of goods*: Global positioning system devices marked with the "Synchronize" mark which shall include pre-programmed software and pre-installed SIM cards, and accompanied by CD-ROM

*Quantity to be purchased*:  (a) ▮ Units to be purchased in 2021;
(b) ▮ Units to be purchased in 2022;
(c) ▮ Units to be purchased in 2023;

*Hardware unit price*: ▮ – subject to an annual unit price increase of no more than ▮

*Software Fee*: $▮ per hour for any new phone application or desktop software upgrades.

23. Paragraph 6 of the Supplier and Exclusivity Agreement provides:

**EXCLUSIVITY IN AUTOMOTIVE DEALERSHIP INDUSTRY.** Exclusivity Period shall mean the period starting at ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ During the Exclusivity Period the Buyer [Synchronize] will not directly or indirectly, through any employee, agent, or otherwise, and will permit any of its agents to solicit, initiate or encourage, any offers or proposals relating to the purchase of the above mentioned Goods to any automotive dealership in North America or its agents. Buyer and Seller agree that during the Exclusivity Period, Buyer shall purchase Product exclusively from Seller and not from any other vendor.

24.     Paragraph 12 of the Supplier and Exclusivity Agreement provides:

**CONFIDENTIALITY.** Both parties acknowledge that during the course of this Agreement, each party may obtain confidential information regarding the other party's business. Both parties agree to treat all such information and the terms of this Agreement as confidential and to take all reasonable precautions against disclosure of such information to unauthorized third parties during and after the term of this Agreement. Upon request by an owner, all documents relating to the confidential information will be returned to such owner.

25.     Two months after entering the Supplier and Exclusivity Agreement, Synchronize attempted to usurp and register the mark SYNChronize by filing U.S. Trademark Application Ser. No. 90/663,958 (the '958 Application) (Exhibit C) on April 22, 2021.

26.     LAS previously applied for this mark as U.S. Trademark Ser. No. 86/932,486 (Exhibit D).

27.     The U.S. Patent and Trademark Office (USPTO) refused registration of the '958 Application in view of likely confusion with LAS's '857 Registration for SYNCHRONIZE®.

28.     Without LAS's consent, Synchronize has sold its business and assets to Vanguard.

29.     Synchronize and Vanguard own the website at www.synchronizeauto.com. Synchronize and Vanguard use the SYNCHRONIZE® mark on this website in connection with GPS products and services without the authorization or consent of LAS.

30.     The website www.synchronizeauto.com now redirects to another website owned by Synchronize, www.waypointgps.com (Exhibit E). Synchronize's Waypoint application has copied LAS's application as evidenced by the screenshots below.



SYNCHRONIZE® Application                                    Waypoint Application

31.     Synchronize and Vanguard own the website at www.synchronizegps.com (Exhibit F – Wayback Machine). Synchronize and Vanguard used the SYNCHRONIZE® mark on this website in connection with GPS products and services without the authorization or consent of LAS.

32.     Synchronize and Vanguard have, without authorization or consent of LAS, advertised, marketed, or sold GPS devices bearing LAS's registered SYNCHRONIZE® mark.

33.     Synchronize and Vanguard have, without authorization or consent of LAS, advertised, marketed, sold or licensed GPS data services using LAS's registered SYNCHRONIZE® mark.

34. Synchronize thereafter began purchasing GPS devices from a third party also in violation of ¶6 which provides that Synchronize was to purchase all of its product exclusively from LAS.

35. Bell personally and knowingly authorized, approved, ratified, directed and/or participated in the infringement of the SYNCHRONIZE® mark, and was a moving, active, conscious force behind the infringement.

36. Synchronize has failed to pay for data services provided by LAS as required by the Supplier and Exclusivity Agreement.

37. Synchronize has sold its business and assets to Vanguard, including the Supplier and Exclusivity Agreement. The Supplier and Exclusivity Agreement does not provide that either party may assign rights thereunder.

38. By selling its business and assets to Vanguard, an automotive dealership, Synchronize has breached the exclusivity provisions of Paragraph 6 that prohibit Synchronize for soliciting purchase of the goods subject to the Supplier and Exclusivity Agreement to a North American automotive dealership or its agents.

39. Synchronize has breached the confidentiality provisions of Paragraph 12 of the Supplier and Exclusivity Agreement by disclosing to Vanguard, EventFalcon and Stanley confidential information about LAS's business including, but not limited to, LAS's customers, pricing, technical information concerning LAS's GPS product, and the existence and contents of the Supplier and Exclusivity agreement.

40. Synchronize has also breached the confidentiality provisions of Paragraph 12 of the Supplier and Exclusivity Agreement by disclosing to Vanguard the existence of LAS's Master Services Agreement with EventFalcon, and the terms thereof.

41.     Synchronize has breached Paragraph 1 of the Supplier and Exclusivity Agreement by failing to purchase the minimum required number of GPS units from LAS for each of the years 2021, 2022 and 2023.

42.     Synchronize's repeated breaches of the Supplier and Exclusivity Agreement repudiates that agreement.

43.     In a letter dated November 23, 2022 (Exhibit G), LAS, through its counsel, informed Synchronize of its breaches and its intent to stop data service to GPS units sold to Synchronize unless Synchronize cured such breaches.

44.     Synchronize did not cure such breaches but has continued to breach the Supplier and Exclusivity Agreement through its conduct.

45.     Vanguard had knowledge of the Supplier and Exclusivity Agreement.

46.     Vanguard induced Synchronize to breach the Supplier and Exclusivity Agreement.

47.     EventFalcon had knowledge of the Supplier and Exclusivity Agreement.

48.     EventFalcon induced Synchronize to breach the Supplier and Exclusivity Agreement.

49.     Stanley had knowledge of the Supplier and Exclusivity Agreement.

50.     Stanley induced Synchronize to breach the Supplier and Exclusivity Agreement.

51.     LAS and EventFalcon are parties to a Master Services Agreement (Exhibit H) dated April 10, 2021 under which EventFalcon was to provide certain deliverables, including but not limited to, a website and application related to LAS's global positioning (GPS) business.

52.     Paragraph 1.3 of the Master Services Agreement defines "Client Materials" as:

any data, work product, information (including Client Data), or content (including derivatives thereof) of any type provided, transmitted, or made accessible to EventFalcon by or on behalf of Client in connection with the Services. All output, copies, reproductions, improvements, modifications, adaptations, and translations,

and other derivative works based on, derived from, or otherwise using any Client Materials are themselves also Client Materials.

53.     Paragraph 1.4 of the Master Services Agreement defines "Confidential Information" as

the proprietary information exchanged between the parties, which is (i) marked "confidential" or "proprietary" at the time of disclosure by the disclosing party; or (ii) by its nature or content is reasonably distinguishable as confidential or proprietary to the receiving party, and includes, without limitation, information (tangible or intangible) regarding a party's technology, designs, techniques, research, know-how, specifications, product plans, pricing, customer information, user data, current or future strategic information, current or future business plans, policies or practices, employee information, and other business and technical information. For clarity, the Client Materials and Work Product, and any derivatives thereof, are Client Confidential Information.

54.     Paragraph 1.4 also states: "The terms and conditions of this Agreement shall be deemed to be the Confidential Information of each party."

55.     Paragraph 1.6 of the Master Services Agreement states:

 "Intellectual Property Rights means any and all right, title and interest in and to any and all trade secrets, patents, copyrights, service marks, trademarks, know-how, trade names, rights in trade dress and packaging, moral rights, rights of privacy, publicity and similar rights of any type, including any applications, continuations or other registrations with respect to any of the foregoing, under the laws or regulations of any foreign or domestic governmental, regulatory or judicial authority.

56.     Paragraph 1.17 of the Master Services Agreement defines "Work Product" as

any and all inventions, products, services, work product, designs, drawings, notes, documents, information, documentation, improvements, works of authorship, processes, techniques, know-how, algorithms, technical and business plans, specifications, hardware, circuits, code, computer languages, computer programs, databases, user interfaces, encoding techniques, and other developments, materials and innovations of any kind that EventFalcon makes, creates, conceives, develops or reduces to practice, alone or jointly with others, pursuant to this Agreement, whether or not they are eligible for patent, copyright, mask work, trade secret, trademark or other legal protection.

57.     Paragraph 4.1 of the Master Services Agreement provides:

**Client Materials.** Client owns all right, title, and interest in the Client Materials, including all future improvements, developments, enhancements, derivative works, and related Intellectual Property Rights based upon, related to, arising from, or associated with the Client Materials. EventFalcon shall have no right or license to, and shall not, use any Client Materials except solely during the term of the Statement of Work(s) for which they are provided to the extent necessary to perform the Services and provide the Work Product to Client or, if a license is required beyond the term of this Agreement, as expressly agreed in a Statement of Work. EventFalcon agrees that any permitted utilization of the Client Materials during the term of an applicable Statement of Work shall not be used for any commercial, marketing or promotional use unless otherwise agreed pursuant to a Statement of Work. All Client Materials created and/or processed by EventFalcon in its performance of the Services is and shall remain the property of Client and shall in no way become attached to EventFalcon's platform, Services, nor shall EventFalcon have any rights in or to Client Materials unless otherwise agreed in a Statement of Work. All other rights in and to the Client Materials are expressly reserved by Client.

58.     Paragraph 4.2.1 of the Master Services Agreement provides:

**Assignment of Work Product.** Client and EventFalcon agree that, to the fullest extent legally possible, all Work Product will be works made for hire owned exclusively by Client. The parties understand and agree that whilst the Work Product delivered pursuant to any Statement of Work may be work for hire, the exclusivity of such Work Product is limited by and subject to the capacity of other clients of EventFalcon to provide equivalent criteria and/or inputs which may produce results equivalent and/or identical to the Work Product supplied to Client from time to time, without reliance upon the Client Materials. EventFalcon shall, upon Client's request, assign to Client all intellectual property and other rights in respect of Work Product, and shall cooperate with Client to apply for, effect and/or register such rights.

59.     Paragraph 4.3 of the Master Services Agreement provides:

**Restrictions on Client Materials and Work Product.** EventFalcon shall not (nor shall EventFalcon permit or enable any third party to) collect, sell, resell, lease, assign, rent, sublicense, distribute, transfer, disclose, timeshare, or otherwise share the Client Materials or Work Product, or any information or data related to, arising out of, or derived therefrom, or any information or data related to, arising out of, or derived from EventFalcon's performance under or related to this Agreement or EventFalcon's provision of the Services or Work Product hereunder, with any third party (including any of EventFalcon's affiliates, clients, EventFalcon, licensors, or business partners), whether verbally or in writing, except if and as expressly outlined herein or in an applicable Statement of Work. EventFalcon agrees that it

will not use or disclose any Client Materials or Work Product, or any derivations or adaptations thereof, in performing any work for any third party.

60.     Paragraph 6.1 of the Master Services Agreement provides:

**Obligations**. Each party agrees to hold Confidential Information in confidence and to not use or disclose it to a third party except as permitted herein. The receiving party will protect the Confidential Information by using the same degree of care, but no less than a reasonable degree of care (including reasonable security measures), to prevent the unauthorized use, dissemination or publication of Confidential Information as the receiving party uses to protect its own confidential information of like nature. If either party authorizes the other to make copies of Confidential Information, the other party's proprietary rights notices will be reproduced in the same manner as the original Confidential Information. The receiving party may disclose the Confidential Information to its employees, agents, financial advisers and independent contractors, only as necessary to fulfill the Services and provided such parties have executed a written nondisclosure agreement substantially as protective of the Confidential Information as this Agreement. The receiving party will promptly notify the disclosing party of any actual or suspected misuse or unauthorized disclosure of the disclosing party's Confidential Information.

61.     Paragraph 6.4 of the Master Services Agreement provides:

**Publicity.** EventFalcon will not, without first obtaining Client's prior consent from a representative of Client, advertise or otherwise disclose that EventFalcon has furnished or agreed to furnish Services to Client under this Agreement. Client shall have the right, and EventFalcon hereby grants Client the right to use EventFalcon's name and logo, and to include references to EventFalcon's Services under this Agreement, as appropriate (in Client's sole discretion), in press, sales, marketing, advertising and publicity materials, including on Client's website(s) and partner lists.

62.     Paragraph 12.5 of the Master Services Agreement provides:

**Equitable Remedies.** Because the Services are personal and unique and because EventFalcon will have access to Confidential Information of Client, Client will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without having to post a bond or other consideration, in addition to all other remedies that Client may have for a breach of this Agreement.

63. EventFalcon and Stanley have used and sold the application and the software and other Client Materials and Work Product owned by LAS with and to at least Synchronize and Vanguard in violation of ¶¶4.1, 4.2.1, and 4.3 and 6.4 of the Master Services Agreement.

64. EventFalcon and Stanley have disclosed the existence and terms of the Master Services Agreement to at least Synchronize and Vanguard in violation of ¶¶1.4 and 6.1 and 6.4.

65. EventFalcon and Stanley have disclosed confidential materials of LAS to at least Synchronize and Vanguard in violation of at least ¶¶1.4, 6.1, and 6.4 of the Master Services Agreement.

66. Together, Synchronize, Vanguard and EventFalcon have used the software and application that EventFalcon created for LAS, for which LAS has paid EventFalcon and that LAS owns, to solicit the business of third parties in competition with LAS.

67. In addition, Vanguard, EventFalcon, and Synchronize have used LAS's confidential information to further solicit business in competition with LAS.

68. Vanguard had knowledge of the Master Services Agreement.

69. Vanguard induced EventFalcon to breach the Master Services Agreement.

70. Synchronize had knowledge of the Master Services Agreement.

71. Synchronize induced EventFalcon to breach the Master Services Agreement.

72. Bell had knowledge of the Master Services Agreement.

73. Bell induced EventFalcon to breach the Master Services Agreement.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT
UNDER 15 U.S.C. § 1114 AGAINST SYNCHRONIZE**

74. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-73 as if restated herein in their entirety.

75. By the unauthorized use of LAS's registered SYNCHRONIZE® mark in association with the sale of unauthorized, non-genuine products and services, Synchronize has infringed and continues to infringe LAS's federally registered trademark rights.

76. Synchronize's use of LAS's SYNCHRONIZE® mark is likely to cause confusion among consumers who are looking for a genuine products and services sold under the mark.

77. As a result of its unauthorized use of LAS's registered SYNCHRONIZE® mark, Synchronize is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1114.

78. Synchronize is likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Synchronize or its products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by LAS of Synchronize or its products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1114.

79. Synchronize's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's trademark rights, with an intention to mislead the public into believing that there is a connection between it and LAS.

80. Synchronize is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Synchronize's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

81. Synchronize's use of the SYNCHRONIZE® mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

82. Synchronize's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Synchronize's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

83. Unless temporarily and permanently enjoined by this Court, Synchronize's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

## COUNT II - FEDERAL TRADEMARK INFRINGEMENT
## UNDER 15 U.S.C. § 1114 AGAINST BELL

84. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-83 as if restated herein in their entirety.

85. By his personally and knowingly having authorized, approved, ratified, directed and/or participated in the infringement of the SYNCHRONIZE® mark, and being a moving, active, conscious force behind the unauthorized use of LAS's registered SYNCHRONIZE® mark in association with the sale of unauthorized, non-genuine products and services, Bell is liable for the infringement of LAS's federally registered trademark rights.

86. Bell's use of LAS's SYNCHRONIZE® mark is likely to cause confusion among consumers who are looking for a genuine products and services sold under the mark.

87. As a result of his unauthorized use of LAS's registered SYNCHRONIZE® mark, Bell is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1114.

88. Bell is likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Synchronize and/or Vanguard or their products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by

LAS of Synchronize and/or Vanguard or their products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1114.

89.     Bell's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's trademark rights, with an intention to mislead the public into believing that there is a connection between Synchronize and/or Vanguard and LAS.

90.     Bell is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Bell's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

91.     Bell's use of the SYNCHRONIZE® mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

92.     Bell's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Bell's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

93.     Unless temporarily and permanently enjoined by this Court, Bell's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

## COUNT III – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114 AGAINST VANGUARD

94.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-93 as if restated herein in their entirety.

95.     By the unauthorized use of LAS's registered SYNCHRONIZE® mark in association with the sale of unauthorized, non-genuine products and services, Vanguard has infringed and continues to infringe LAS's federally registered trademark rights.

96.     Vanguard's use of LAS's SYNCHRONIZE® mark is likely to cause confusion among consumers who are looking for a genuine products and services sold under the mark.

97.     As a result of its unauthorized use of LAS's registered SYNCHRONIZE® mark, Vanguard is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1114.

98.     Vanguard is likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Vanguard or its products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by LAS of Vanguard or its products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1114.

99.     Vanguard's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's trademark rights, with an intention to mislead the public into believing that there is a connection between it and LAS.

100.    Vanguard is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Vanguard's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

101.    Vanguard's use of the SYNCHRONIZE® mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

102.    Vanguard's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until LAS's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

103.    Unless temporarily and permanently enjoined by this Court, Vanguard's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

**COUNT IV – FALSE DESIGNATION OF ORIGIN**
**UNDER 15 U.S.C. § 1125(a) AGAINST SYNCHRONIZE**

104.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-103 as if restated herein in their entirety.

105.    Synchronize's actions have violated the Lanham Act, § 1125(a) because they constitute a word, term, symbol, and a false designation of origin, and false or misleading description or representation of fact that are likely to cause confusion among consumers who are looking for a genuine product or service sold by LAS under the SYNCHRONIZE® mark.

106.    As a result of its actions, Synchronize is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1125(a).

107.    Synchronize's actions are likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Synchronize or its products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by LAS of Synchronize or its products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

108.    Synchronize's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between it and LAS.

109.    Synchronize is trading on LAS's goodwill and reputation and, by reason of Synchronize's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

110. Synchronize's actions have caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

111. Synchronize's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Synchronize's actions are enjoined by this Court.

112. Unless temporarily and permanently enjoined by this Court, Synchronize's actions will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

## COUNT V – FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(a) AGAINST BELL

113. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-112 as if restated herein in their entirety.

114. Bell's actions have violated the Lanham Act, § 1125(a) because they constitute a word, term, symbol, and a false designation of origin, and false or misleading description or representation of fact that are likely to cause confusion among consumers who are looking for a genuine product or service sold by LAS under the SYNCHRONIZE® mark.

115. As a result of his actions, Bell is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1125(a).

116. Bell's actions are likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Synchronize and/or Vanguard or their products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by LAS of Synchronize and/or Vanguard or their products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

18

117.    Bell's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between Synchronize and/or Vanguard and LAS.

118.    Bell is trading on LAS's goodwill and reputation, and by reason of Bell's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

119.    Bell's actions have caused and continue to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

120.    Bell's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Bell's actions are enjoined by this Court.

121.    Unless temporarily and permanently enjoined by this Court, Bell's actions will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

**COUNT VI – FALSE DESIGNATION OF ORIGIN
UNDER 15 U.S.C. § 1125(a) AGAINST VANGUARD**

122.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-121 as if restated herein in their entirety.

123.    Vanguard's actions have violated the Lanham Act, § 1125(a) because they constitute a word, term, symbol, and a false designation of origin, and false or misleading description or representation of fact that are likely to cause confusion among consumers who are looking for a genuine product or service sold by LAS under the SYNCHRONIZE® mark.

124.    As a result of its actions, Vanguard is likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1125(a).

125.    Vanguard's actions are likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Vanguard or its products and services and LAS or its products and services, or as to the origin, sponsorship, or approval by LAS of Vanguard or its products and services, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

126.    Vanguard's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between Vanguard and LAS.

127.    Vanguard is trading on LAS's goodwill and reputation, and by reason of Vanguard's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

128.    Vanguard's actions have caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

129.    Vanguard's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Vanguard's actions are enjoined by this Court.

130.    Unless temporarily and permanently enjoined by this Court, Vanguard's actions will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

## COUNT VII – VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1, *et seq*. AGAINST SYNCHRONIZE

131.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-130 as if restated herein in their entirety.

132.     Synchronize's acts including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize with LAS as to the origin, sponsorship, or approval of Synchronize's products and services.

133.     Synchronize's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Synchronize's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

134.     Synchronize's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

135.     Such actions constitute a violation of 815 ILCS 510/2, and LAS is entitled to damages for same.

136.     Synchronize's violation of 815 ILCS 510/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same pursuant to Illinois, 815 ILCS 510/3.

## COUNT VIII – VIOLATION OF ILLINOIS DECEPTIVE
## TRADE PRACTICES ACT, 815 ILCS 510/1, *et seq.* AGAINST BELL

137.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-136 as if restated herein in their entirety.

138.     Bell's acts including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize and/or Vanguard with LAS as to the origin, sponsorship, or approval of Synchronize's and/or Vanguard's products and services.

139. Bell's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Bell's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

140. Bell's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

141. Such actions constitute a violation of 815 ILCS 510/2, and LAS is entitled to damages for same.

142. Bell's violation of 815 ILCS 510/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same pursuant to Illinois, 815 ILCS 510/3.

## COUNT IX - VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1, *et seq.* AGAINST VANGUARD

143. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-142 as if restated herein in their entirety.

144. Vanguard's acts including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Vanguard with LAS as to the origin, sponsorship, or approval of Vanguard's products and services.

145. Vanguard's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Vanguard's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

146. Vanguard's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

147.     Such actions constitute a violation of 815 ILCS 510/2, and LAS is entitled to damages for same.

148.     Vanguard's violation of 815 ILCS 510/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same pursuant to Illinois, 815 ILCS 510/3.

### COUNT X – VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.* AGAINST SYNCHRONIZE

149.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-148 as if restated herein in their entirety.

150.     Synchronize's acts, including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize with LAS as to the origin, sponsorship, or approval of Synchronize's products and services.

151.     Synchronize's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Synchronize's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

152.     Synchronize's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

153.     Such actions constitute a violation of 815 ILCS 505/2, and LAS is entitled to damages for same.

154.     Synchronize's violation of 815 ILCS 505/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same.

**COUNT XI – VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq*. AGAINST BELL**

155.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-154 as if restated herein in their entirety.

156.    Bell's acts, including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize and/or Vanguard with LAS as to the origin, sponsorship, or approval of Synchronize's and/or Vanguard's products and services.

157.    Bell's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Bell's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

158.    Bell's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

159.    Such actions constitute a violation of 815 ILCS 505/2, and LAS is entitled to damages for same.

160.    Bell's violation of 815 ILCS 505/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same.

**COUNT XII – VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq*. AGAINST VANGUARD**

161.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-160 as if restated herein in their entirety.

162.    Vanguard's acts, including use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to

deceive as to affiliation, connection, or association of Vanguard with LAS as to the origin, sponsorship, or approval of Vanguard's products and services.

163. Vanguard's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Vanguard's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

164. Vanguard's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

165. Such actions constitute a violation of 815 ILCS 505/2, and LAS is entitled to damages for same.

166. Vanguard's violation of 815 ILCS 505/2 was willful and deliberate, and therefore, LAS should be entitled to the costs of this action, and reasonable attorneys' fees for same

## COUNT XIII - COMMON LAW TRADEMARK
## INFRINGMENT AGAINST SYNCHRONIZE

167. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-166 as if restated herein in their entirety.

168. Synchronize's use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize with LAS as to the origin, sponsorship, or approval of Synchronize's products and services.

169. Synchronize's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Synchronize's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

170. Synchronize's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

171. The acts of Synchronize described above have caused unfair and unjust commercial injury to LAS.

172. Because of Synchronize's actions, LAS has lost business and potential business as a result of that conduct and has incurred commercial and marketplace damage as a continuing result of same.

173. Synchronize's actions constitute the common law tort of trademark infringement.

174. LAS is entitled to damages as a result of Synchronize's infringement.

## COUNT XIV - COMMON LAW TRADEMARK INFRINGMENT AGAINST BELL

175. LAS realleges and incorporates each of the allegations set forth in paragraphs 1-174 as if restated herein in their entirety.

176. Bell's use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Synchronize and/or Vanguard with LAS as to the origin, sponsorship, or approval of Synchronize's and/or Vanguard's products and services.

177. Bell's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Bell's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

178. Bell's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

179. The acts of Bell described above have caused unfair and unjust commercial injury to LAS.

180.    Because of Bell's actions, LAS has lost business and potential business as a result of that conduct and has incurred commercial and marketplace damages as a continuing result of same.

181.    Bell's actions constitute the common law tort of trademark infringement.

182.    LAS is entitled to damages as a result of Bell's infringement.

## COUNT XV - COMMON LAW TRADEMARK INFRINGMENT AGAINST VANGUARD

183.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-182 as if restated herein in their entirety.

184.    Vanguard's use of the SYNCHRONIZE® mark and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Vanguard with LAS as to the origin, sponsorship, or approval of Vanguard's products and services.

185.    Vanguard's acts are causing damage and other irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless Vanguard's uses of the SYNCHRONIZE® mark, and variations thereof, are enjoined by this Court.

186.    Vanguard's conduct as described herein has been willful, wanton, reckless, and in total disregard for LAS's rights.

187.    The acts of Vanguard described above have caused unfair and unjust commercial injury to LAS.

188.    Because of Vanguard's actions, LAS has lost business and potential business as a result of that conduct and has incurred commercial and marketplace damages as a continuing result of same.

189.    Vanguard's actions constitute the common law tort of trademark infringement.

190.     LAS is entitled to damages as a result of Vanguard's infringement.

## COUNT XVI – COMMON LAW UNFAIR COMPETITION AGAINST SYNCHRONIZE

191.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-190 as if restated herein in their entirety.

192.     Synchronize's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between it and LAS.

193.     Synchronize is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Synchronize's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

194.     Synchronize's use of the SYNCHRONIZE mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

195.     Synchronize's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Synchronize's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

196.     Unless temporarily and permanently enjoined by this Court, Synchronize's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

197.     Synchronize's actions constitute the common law tort of unfair competition.

198.     LAS is entitled to damages as a result of Synchronize's conduct.

**COUNT XVII – COMMON LAW UNFAIR COMPETITION AGAINST BELL**

199.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-198 as if restated herein in their entirety.

200.    Bell's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between Synchronize and/or Vanguard and LAS.

201.    Bell is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Bell's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

202.    Bell's use of the SYNCHRONIZE® mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

203.    Bell's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Bell's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

204.    Unless temporarily and permanently enjoined by this Court, Bell's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

205.    Bell's actions constitute the common law tort of unfair competition.

206.    LAS is entitled to damages as a result of Bell's conduct.

**COUNT XVIII – COMMON LAW UNFAIR COMPETITION AGAINST VANGUARD**

207.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-206 as if restated herein in their entirety.

208.    Vanguard's acts were and are undertaken willfully and in bad faith and in conscious disregard of LAS's rights, with an intention to mislead the public into believing that there is a connection between it and LAS.

209.    Vanguard is trading on the goodwill symbolized by LAS's SYNCHRONIZE® mark and, by reason of Vanguard's acts, LAS has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

210.    Vanguard's use of the SYNCHRONIZE mark has caused and continues to cause harm to LAS's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to LAS's market share and trademark rights.

211.    Vanguard's acts are causing irreparable injury to LAS, for which there is no adequate remedy at law, and will continue to do so unless and until Vanguard's use of the SYNCHRONIZE® mark, and variations thereof, is enjoined by this Court.

212.    Unless temporarily and permanently enjoined by this Court, Vanguard's acts will immediately and irreparably injure LAS's goodwill, erode its market share, and cause confusion in the marketplace.

213.    Vanguard's actions constitute the common law tort of unfair competition.

214.    LAS is entitled to damages as a result of Vanguard's conduct.

**COUNT XIX - BREACH OF CONTRACT AGAINST SYNCHRONIZE**

215    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-214 as if restated herein in their entirety.

216.    LAS and Synchronize were parties to the Supplier and Exclusivity Agreement.

217.    LAS has fully complied with the terms of the Supplier and Exclusivity Agreement.

218.    Synchronize has breached at least ¶¶1, 6 and 12 of the Supplier and Exclusivity Agreement.

219.    LAS and its business have been damaged by Synchronize's breaches.

**COUNT XX – BREACH OF CONTRACT AGAINST EVENTFALCON**

220.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-219 as if restated herein in their entirety.

221.    LAS and EventFalcon are parties to the Master Services Agreement.

222.    LAS has fully complied with the terms of the Master Services Agreement.

223.    EventFalcon has breached at least ¶¶1.4, 4.1, 4.2.1, 4.3, 6.1, and 6.4 of the Master Services Agreement.

224.    LAS and its business have been damaged by EventFalcon's breaches.

**COUNT XXI – INTENTIONAL INTERFERENCE WITH
MASTER SERVICES AGREEMENT AGAINST SYNCHRONIZE**

225.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-220 as if restated herein in their entirety.

226.    A valid and enforceable Master Services Agreement existed between LAS and EventFalcon.

227.    Synchronize was aware of the Master Services Agreement between LAS and EventFalcon.

228.    EventFalcon breached Master Services Agreement.

229.    Synchronize intentionally and unjustifiably interfered with the Master Services Agreement between LAS and EventFalcon.

230.    Synchronize intentionally and unjustifiably induced EventFalcon's breach of the insurance contract with LAS.

231.     LAS has been damaged by Synchronize's intentional and unjustified inducement of EventFalcon's breach of the Master Services Agreement.

## COUNT XXII - INTENTIONAL INTERFERENCE WITH
## MASTER SERVICES AGREEMENT AGAINST BELL

232.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-231 as if restated herein in their entirety.

233.     A valid and enforceable Master Services Agreement existed between LAS and EventFalcon.

234.     Bell was aware of the Master Services Agreement between LAS and EventFalcon.

235.     EventFalcon breached Master Services Agreement.

236.     Bell intentionally and unjustifiably interfered with the Master Services Agreement between LAS and EventFalcon.

237.     Bell intentionally and unjustifiably induced EventFalcon's breach of the insurance contract with LAS.

238.     LAS has been damaged by Bell's intentional and unjustified inducement of EventFalcon's breach of the Master Services Agreement.

## COUNT XXIII - INTENTIONAL INTERFERENCE WITH
## MASTER SERVICES AGREEMENT AGAINST VANGUARD

239.     LAS realleges and incorporates each of the allegations set forth in paragraphs 1-238 as if restated herein in their entirety.

240.     A valid and enforceable Master Services Agreement existed between LAS and EventFalcon.

241.     Vanguard was aware of the Master Services Agreement between LAS and EventFalcon.

242.    EventFalcon breached Master Services Agreement.

243.    Vanguard intentionally and unjustifiably interfered with the Master Services Agreement between LAS and EventFalcon.

244.    Vanguard intentionally and unjustifiably induced EventFalcon's breach of the insurance contract with LAS.

245.    LAS has been damaged by Vanguard's intentional and unjustified inducement of EventFalcon's breach of the Master Services Agreement.

**COUNT XXIV - INTENTIONAL INTERFERENCE WITH SUPPLIER
AND EXCLUSIVITY AGREEMENT AGAINST VANGUARD**

246.    LAS realleges and incorporates each of the allegations set forth in paragraphs 1-245 as if restated herein in their entirety.

247.    A valid and enforceable Supplier and Exclusivity Agreement existed between LAS and Synchronize.

248.    Vanguard was aware of the Supplier and Exclusivity Agreement between LAS and Synchronize.

249.    Synchronize breached Supplier and Exclusivity Agreement.

250.    Vanguard intentionally and unjustifiably interfered with the Supplier and Exclusivity Agreement between LAS and Synchronize.

251.    Vanguard intentionally and unjustifiably induced Synchronize's breach of the Supplier and Exclusivity Agreement with LAS.

252.    LAS has been damaged by Vanguard's intentional and unjustified inducement of Synchronize's breach of the Supplier and Exclusivity Agreement.

## COUNT XXV - INTENTIONAL INTERFERENCE WITH SUPPLIER
## AND EXCLUSIVITY AGREEMENT AGAINST EVENTFALCON

253.   LAS realleges and incorporates each of the allegations set forth in paragraphs 1-252 as if restated herein in their entirety.

254.   A valid and enforceable Supplier and Exclusivity Agreement existed between LAS and Synchronize.

255.   EventFalcon was aware of the Supplier and Exclusivity Agreement between LAS and Synchronize.

256.   Synchronize breached Supplier and Exclusivity Agreement.

257.   EventFalcon intentionally and unjustifiably interfered with the Supplier and Exclusivity Agreement between LAS and Synchronize.

258.   EventFalcon intentionally and unjustifiably induced Synchronize's breach of the Supplier and Exclusivity Agreement with LAS.

259.   LAS has been damaged by EventFalcon's intentional and unjustified inducement of Synchronize's breach of the Supplier and Exclusivity Agreement.

## COUNT XXVI - INTENTIONAL INTERFERENCE WITH SUPPLIER
## AND EXCLUSIVITY AGREEMENT AGAINST STANLEY

260.   LAS realleges and incorporates each of the allegations set forth in paragraphs 1-259 as if restated herein in their entirety.

261.   A valid and enforceable Supplier and Exclusivity Agreement existed between LAS and Synchronize.

262.   Stanley was aware of the Supplier and Exclusivity Agreement between LAS and Synchronize.

263.   Synchronize breached Supplier and Exclusivity Agreement.

264.    Stanley intentionally and unjustifiably interfered with the Supplier and Exclusivity Agreement between LAS and Synchronize.

265.    Stanley intentionally and unjustifiably induced Synchronize's breach of the Supplier and Exclusivity Agreement with LAS.

266.    LAS has been damaged by Stanley's intentional and unjustified inducement of Synchronize's breach of the Supplier and Exclusivity Agreement.

## PRAYER FOR RELIEF

WHEREFORE LAS requests that the Court enter a judgment in LAS's favor granting the following relief:

1)    That Defendants Synchronize, Bell and Vanguard have infringed the registered SYNCHRONIZE® mark in violation of 15 U.S.C. § 1114;

2)    That Defendants Synchronize, Bell and Vanguard have violated 15 U.S.C. § 1125;

3)    That Defendants Synchronize, Bell and Vanguard have violated Illinois statutes 815 ILCS 505/2, *et seq*. and 510/2, *et seq*.;

4)    That Defendants Synchronize, Bell and Vanguard have engaged in common law trademark infringement and unfair competition;

5)    That Defendant EventFalcon has breached the Master Services Agreement;

6)    That Defendant Synchronize has breached the Supplier and Exclusivity Agreement;

7)    That Defendants Synchronize, Bell, and Vanguard have intentionally and unjustifiably interfered with the Master Services Agreement between LAS and EventFalcon;

8)    That Vanguard, EventFalcon and Stanley have intentionally and unjustifiably interfered with the Supplier and Exclusivity Agreement between LAS and Synchronize;

9)      Permanently enjoining and restraining Defendants from using the mark SYNCHRONIZE® or any confusingly similar mark;

10)     Requiring Synchronize to assign the domain names www.synchronizeauto.com and www.synchronizegps.com to LAS;

11)     An award to LAS of its damages and Defendants Synchronize's, Bell's and Vanguard's profits for their violations of the Lanham Act, the Illinois statutes 815 ILCS 505/2, *et seq.* and 510/2, *et seq.*, and the common law of unfair competition and trademark infringement;

12)     An award to LAS of its damages for Defendant EventFalcon's breach of contract;

13)     An award to LAS of its damages for Defendant Synchronize's breach of contract;

14)     An award to LAS of its damages for Defendants Synchronize, Bell, and Vanguard intentional interference with the Master Services Agreement between LAS and EventFalcon;

15)     An award to LAS of its damages for Defendant Vanguard's, EventFalcon's and Stanley's intentional interference with the Supplier and Exclusivity Agreement between LAS and Synchronize;

16)     An order declaring that this is an exceptional case, awarding LAS its costs, expenses, disbursements and reasonable attorney fees under 15 U.S.C. § 1117(a) and all other applicable statutes, rules and common law;

17)     An order awarding LAS punitive damages for Defendants' tortious conduct.

18)     Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

LandAirSea hereby demands trial by jury of all issues in this action so triable.

Dated: July 28, 2023

Respectfully submitted,

s/ Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
James J. Jagoda
jjagoda@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Telephone: (847) 969-9123
Facsimile: (847) 969-9124

*Counsel for Plaintiff, LandAirSea Systems, Inc.*